# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW**<br>1401 New York Avenue, N.W.<br>Washington, D.C. 20005,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>**LSREF 2 WINDMILL REO (NEW YORK), LLC**<br>7101 Wisconsin Avenue<br>Suite 1210<br>Bethesda, Maryland 20814<br><br>and/or<br><br>2711 N. Haskell Avenue 1700<br>Dallas, Texas 75204-2922,<br><br>　　　　Defendant. | CIVIL ACTION NO.<br><br><br><br>COMPLAINT<br><br><br>DEMAND FOR JURY TRIAL |

Plaintiff Lawyers' Committee for Civil Rights Under Law ("LCCR") alleges against Defendant LSRef 2 Windmill Reo (New York), LLC ("Landlord") as follows:

## NATURE OF THE ACTION

1.　This Complaint is an action for Landlord's anticipatory breach of the lease between LCCR and Landlord, and for declaratory judgment.

## THE PARTIES

2.　Plaintiff LCCR is a District of Columbia non-profit corporation having a principal place of business located at 1401 New York Avenue, N.W., Washington, D.C. LCCR is a nationally renowned non-partisan, nonprofit civil rights organization formed in 1963 at the request of President John F. Kennedy to enlist the private bar's leadership and resources in

combating racial discrimination and the resulting inequality of opportunity. The principal mission of LCCR is to secure equal justice for all through the rule of law, targeting in particular the inequities confronting African-Americans and other racial and ethnic minorities. LCCR functions for the most part like a law firm and implements its mission and objectives through collaborative, multi-dimensional approaches to litigation, public policy advocacy, education of the public, transactional representation, and other forms of service in the cause of civil rights.

3. Defendant Landlord is a Delaware for profit limited liability company with a principal place of business located, upon information and belief, either at 7101 Wisconsin Avenue, Bethesda, Maryland 20814 or 2711 N. Haskell Avenue 1700, Dallas, Texas 75204-2922. Upon information and belief, Landlord is jointly owned by Minshall Stewart Properties, LLC and Heitman LLC.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that there is diversity of citizenship between the parties and the amount in controversy exceeds the sum or value of $75,000.

5. Venue is proper because a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in the District of Columbia and the property at issue is located in the District of Columbia.

## GENERAL ALLEGATIONS

### The Lease

6. LCCR entered into the original lease with the owner of the property, 1401 New York Avenue, Inc. (the "Original Landlord"), Landlord's predecessor in interest, on or about February 24, 1999 (the "Original Lease"). A copy of the Original Lease is attached hereto as

Exhibit 1.  Upon information and belief, Landlord purchased the building and real property located at 1401 New York Avenue, N.W., Washington, D.C. (the "Property") from the Original Landlord in late 2013.  The terms and conditions of LCCR's leasehold interest have remained unchanged as a result of Landlord's purchase of the Property.

7. Pursuant to the Original Lease, LCCR obtained a ten-year leasehold of 15,011 square feet of rentable office space located on the fourth floor of the commercial office building located on the Property.   The space rented by LCCR is used primarily for professional administrative and executive offices for LCCR, with the offices occupied primarily by working attorneys and other professionals who support their work.  Original Lease at § 7.01.

8. On or about July 14, 1999, LCCR and the Original Landlord entered into a first amendment to the Original Lease.  The purpose of the first amendment was to enable LCCR to rent an additional 180 square feet of rentable space on floor B-3 of the building to use for storage.  A copy of the first amendment is attached hereto as Exhibit 2.  Thereafter, on or about November 14, 2007, LCCR and the Original Landlord entered into a second amendment to the Original Lease.  The amendment, among other things, expanded to 18,754 the rentable square feet of LCCR's leasehold on the fourth and fifth floors of the building and extended the term of the leasehold until April 30, 2018.  A copy of the second amendment is attached hereto as Exhibit 3.  Finally, on or about March 28, 2011, LCCR and the Original Landlord entered into a third amendment to the Original Lease, which provided that LCCR would move from the 180 square feet of storage space on B-3 to 198 square feet of storage space in the building's parking garage.  A copy of the third amendment is attached hereto as Exhibit 4.  The Original Lease and all of the amendments thereto will be referred to here collectively as the "Lease."

9. The Lease entitles LCCR to the full use and benefit of 18,754 square feet of rental office space and 198 square feet of storage space (the "Premises"), for which LCCR is paying rent. Importantly, the Lease expressly states that LCCR is entitled to the quiet enjoyment of the Premises and the absence of disturbances by Landlord:

> Landlord covenants that the Tenant, upon paying Basic Monthly Rent, all additional rent and other sums and charges herein provided for and observing and keeping all covenants, agreements and conditions of this Lease on its part to be observed and kept, **shall quietly have and enjoy the Premises during the Term without hindrance by anyone claiming by, through or under Landlord**, subject however to the exceptions, reservations and conditions of this Lease.

Lease at § 24.04 (emphasis added).

10. The Lease also provides LCCR with further assurances of non-disturbance of its use of the Premises in the event Landlord chooses to renovate, including limiting Landlord to "**access to the Premises at all reasonable times**, upon reasonable notice, for the purpose of performing such work," and requiring the Landlord to "use **reasonable efforts … to avoid disruption of Tenant's business** during any such entry upon the Premises or during the performance of any such work by Landlord." Original Lease at § 15.02 (a) and (b) (emphasis added). The Lease does not permit Landlord to move furniture, construct new walls, block off existing walls, displace LCCR from the Premises or any portion of it, take, reduce, or occupy the Premises, or move LCCR to new space, even temporarily, in connection with renovations.

### Landlord's Planned Renovations

11. Upon information and belief, shortly after its purchase of the Property, Landlord determined that it would undertake a major renovation of the Property, although the Property had recently undergone significant renovation to the common area, corridor, restroom and exterior. Upon learning in late May 2014 of yet another round of proposed renovations, LCCR, through its real estate broker, sought a substantive and meaningful dialogue with Landlord regarding the

proposed renovations, the avoidance of disruption to LCCR's work and Landlord's plans for the Premises.  LCCR's efforts to engage in such a substantive dialogue through the summer and early Fall of 2014, including its requests for specific construction plans and timetables, were largely ignored.

12. Landlord met with LCCR's real estate broker, West, Lane & Schlager Realty Advisors, LLC ("WLS"), on May 23, 2014, to provide a summary of the renovation plan. Thereafter, WLS conducted several telephone calls with Landlord's representatives to attempt to obtain further information and share LCCR's concerns about the inevitable disruption to its business operations that would necessarily result from the renovation.  These discussions were not productive, in that Landlord failed to provide detailed information and declined to present any realistic options for addressing LCCR's concerns.

13. By letter dated July 29, 2014 to the Landlord's agent, LCCR's President and Executive Director outlined the nature of LCCR operations as a national public interest law firm, and made clear that the planned renovations would unreasonably interfere with LCCR's business operations.  A copy of the July 29, 2014 letter is attached hereto as Exhibit 5.  LCCR also proposed a termination of the Lease with a timeframe sufficient to allow an orderly relocation to another building.  LCCR did not receive a substantive written response to this letter.

14. Landlord's representatives ultimately agreed to a meeting with LCCR and its broker, which took place on August 11, 2014.  At this meeting Landlord reiterated its view that LCCR staff could remain in their offices while all renovation efforts, including the complete replacement of the building skin, were conducted, or could relocate to swing space on another floor in four sequential quadrants that would correspond to Landlord's vertical renovation plan. However, the Landlord made clear its belief that, regardless of whether LCCR found any of

5

Landlord's proposals acceptable, Landlord would proceed with the renovation as planned, starting in or about January 2015, in the belief that it has the unfettered right to do so under the Lease.

15. On September 5, 2014, LCCR, through its General Counsel, followed up on the August meeting with a letter to the Landlord making clear LCCR's position that Landlord is constrained by the Lease from proceeding in the manner it has proposed, absent reasonable efforts to avoid disruption of LCCR's business operations, and that Landlord's proposals to date do not constitute reasonable efforts. A copy of the September 5, 2014 letter is attached hereto as Exhibit 6. LCCR reiterated its proposed termination of the Lease to allow LCCR to move to another building before renovation begins, including a possible relocation to another building in which Landlord has an ownership interest. LCCR also proposed as a new alternative that Landlord complete the renovation of sufficient space elsewhere in the building to accommodate a one-time relocation of LCCR's entire staff until the end of the Lease term. LCCR asked for copies of construction plans and additional detail to better understand exactly how the renovation would be conducted, and for a meeting within the next two weeks, after an opportunity to review the written materials requested, to continue discussing alternative solutions to the problem. Landlord was unresponsive to this letter for two months and failed to provide the requested documents.

16. Notwithstanding LCCR's efforts, from May through November 2014, LCCR received little substantive information from Landlord as to how the substantial renovations were to be accomplished and the impact on the Premises and on LCCR's use of the space. Landlord's dismissive responses to LCCR's inquiries and proposals were little more than a statement that Landlord intends to honor the terms of the Lease. How Landlord would do so, given its intent to

6

undertake a significant renovation of the building systems and exterior that necessarily includes extensive incursion into LCCR's Premises, was not explained to LCCR.  Although LCCR proposed several alternative arrangements for its office space needs during the renovation work and requested copies of the renovation plans, Landlord refused even to address these proposals in a meaningful way or to provide a copy of the plans.  Upon information and belief, Landlord's silence and unresponsiveness to LCCR was intended to avoid giving LCCR an opportunity to oppose Landlord's permit requests lodged with the relevant District of Columbia permit authority, and to pressure LCCR into acquiescing in Landlord's proposed arrangements in the limited time remaining before renovation begins.

17. On or about November 7, 2014, Texas counsel for Landlord finally wrote to counsel for LCCR regarding the now imminent renovations (the "November 2014 Letter").  A copy of the November 2014 letter is attached hereto as Exhibit 7.  The letter states that Landlord will be undertaking extensive renovations of the Property, including replacing the external façade, exterior windows and ventilating systems.  According to the letter, the renovation work is to be accomplished in four vertical phases, each to be at least ninety days in duration.  The November 2014 letter further advised that while some unspecified amount of the work may be undertaken at night and on weekends pursuant to permits obtained by Landlord, off hours work may not be possible because surrounding property owners and residents could complain to the District of Columbia Department of Consumer and Regulatory Affairs and such permits could be revoked or restricted.  The November 2014 Letter makes clear that construction noise and disturbance, whenever the work is performed, will be disruptive to the neighborhood, and obviously to LCCR as a tenant in the building.  It is also clear from the November 2014 Letter that Landlord expects LCCR to remain in its current space during the course of this extensive

work, or have affected personnel who cannot tolerate the conditions of the Premises temporarily relocate to alternative space.

18. The November 2014 Letter outlines two possible approaches for Landlord's intrusion into the Premises and the disruption of LCCR's use of the space during the renovations. Pursuant to Option 1, Landlord would build a temporary partition in each LCCR office that has an exterior wall, walling off the existing walls and windows and reducing the usable office space in each office. Upon information and belief, the partition walls would be set back approximately 2 to 4 feet from the existing walls, thereby depriving each office of a significant amount of space and all natural light. Upon information and belief, the total amount of the Premises that would be taken by Landlord and rendered unusable to LCCR could be as much as 2,012 rentable square feet.

19. Pursuant to Option 2, Landlord would erect a temporary partition on the Premises on the north façade of the building only, again taking 2-4 feet off the existing walls of those north facing offices on the Premises. In addition, Landlord would enter the Premises and remove floor mounted heat pumps, knee wall and the existing window wall system. It is possible that during the time this removal work is in progress, LCCR would be deprived of access to portions of the Premises.

20. Under either option, should the occupants of the affected offices find the impact on their space unacceptable, Landlord has offered to make available swing space on the sixth floor of the building that will not be subject to the partitions. Landlord has offered no rent abatement for its taking of the Premises under either Option 1 or 2.

21. Pursuant to the November 2014 Letter, Landlord has rejected all proposals made by LCCR that would minimize the disruption to the Premises and to LCCR's work. These

suggestions include relocation to another property or moving all of the LCCR operations to other floors in the building at 1401 New York Avenue, N.W., Washington, D.C. that will not be impacted by the renovations.

22.     The options presented by Landlord would be both highly disruptive to LCCR's work and violate the terms of the Lease.  Given the nature of its work, LCCR operates similar to a law firm but with a specific focus on equal access and protection for racial and ethnic minorities in connection with education, employment discrimination, fair housing, public policy, voter rights and other areas.  Much of its work requires quiet "thinking" and "strategy" time, and collaborative effort that requires that the staff be accessible to each other.  In addition, the demands of nationwide litigation in which LCCR partners with a number of law firms, and occurring in different time zones, require LCCR to work outside the traditional 9 to 5 work day. The taking of a significant portion of the Premises, the interruption of services that are to be provided under the Lease, and the disruption caused by the renovation work and erection of partitions are likely to negatively impact the meetings and other activities in the Premises that are attended by Board members, volunteers, coalition partners and clients.

**FIRST CLAIM FOR RELIEF**
**(Anticipatory Breach of Lease)**

23.     Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1 through 22 as if they were fully set forth here.

24.     The Lease entitles LCCR to quietly have and enjoy the Premises during the term without hindrance by anyone claiming by, through or under Landlord, except as specifically provided in the Lease.  Lease at § 24.04.  The Lease requires Landlord to use reasonable efforts to avoid disruption of LCCR's business during any entry upon the Premises or during the performance of any renovation work performed.  *Id*. at § 15.02(a).

9

25. Under either Option 1 or Option 2 as proposed by Landlord in the November 2014 Letter, Landlord has clearly, forcefully, and unequivocally repudiated and breached the Lease by its assertion that LCCR will be deprived of the quiet enjoyment of the Premises, will be denied access to all or a significant portion of the Premises, and will have its business disrupted without Landlord taking reasonable efforts to avoid disruption of LCCR's business.  Landlord has communicated, by both word and/or conduct, unequivocally and positively its intention not to perform its obligations under the Lease.

26. As a direct and proximate result of Landlord's anticipatory breaches of the Lease, LCCR has already suffered, and will continue to suffer additional injury and damages in an amount in excess of $75,000.

**SECOND CLAIM FOR RELIEF**
**(Declaratory Relief)**

27. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 26 as if they were fully set forth here.

28. The Lease requires Landlord to "use reasonable efforts…to avoid disruption of [LCCR's] business during any such entry upon the Premises or during the performance of any such work by Landlord." Lease at § 15.02(b).

29. The two options proposed by Landlord in the November 2014 Letter are the only options that Landlord will consider, having rejected all proposals made by LCCR, and offering no others.  Both options proposed by Landlord deny LCCR access to some portion of the Premises for extended and uncertain periods of time, unreasonably disrupt LCCR's work and use of the Premises, compel the reconfiguration of LCCR's offices, will force LCCR employees and guests to abandon the Premises for periods of time due to excessive noise and disruption, loss of light, air quality and services, and require the Landlord to have access to the Premises for

extended, uncertain periods of time with attendant displacement of LCCR personnel and activities.

30.     Landlord contends that the two options it has proposed more than comply with its obligations under the Lease and constitute "more than reasonable efforts…to avoid disruption to Tenant's business." November 2014 Letter at 1. LCCR contends that the two options proposed by Landlord do not constitute "reasonable efforts …to avoid disruption of Tenant's business during any such entry upon the Premises or during the performance of any such work by Landlord" and otherwise violate the Lease. Lease at § 15.02(b).

31.     An actual case or controversy exists between the parties with regard to whether the two options proposed by Landlord constitute "reasonable efforts …to avoid disruption to Tenant's business" as required by the Lease. *Id.*

32.     Accordingly, LCCR requests that the Court issue judgment in its favor, stating and declaring that the two options proposed by Landlord in the November 2014 letter do not constitute "reasonable efforts…to avoid disruption to Tenant's business during any such entry upon the Premises or during the performance of any such work by Landlord." *Id.*

## RELIEF SOUGHT

WHEREFORE, Plaintiff prays that the Court:

A.     Enter judgment in favor of LCCR on all counts of this Complaint;

B.     Enter an Order awarding LCCR monetary damages in an amount in excess of $75,000, such amount to be determined at trial, plus interest and costs;

C.     Enter judgment stating and declaring that the two options proposed by Landlord in the November 2014 letter do not constitute "reasonable efforts…to avoid disruption to

Tenant's business during any such entry upon the Premises or during the performance of any such work by Landlord;"

  D. Enter an order preliminarily and permanently enjoining Landlord from entering the Premises to conduct any work related to renovations, erecting any temporary partitions, depriving LCCR of the use of any portion of the Premises, removing the floor mounted heat pumps, existing knee wall and/or the existing window wall system from the Premises or commencing work on the exterior of the Premises that affects LCCR's use of and access to the Premises;

  E. Enter an Order awarding LCCR as the prevailing party pursuant to section 15.02(b) of the Lease, a sum equal to all actual legal fees (excluding any charges related to services by in-house counsel), costs and disbursements reasonably incurred by LCCR in any way related to or arising out of this action; and

  F. Grant such other and further relief as justice so requires, or as may be necessary or proper to aid enforcement of a declaratory judgment in favor of LCCR.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims that may be tried to a jury.

DATED: December 2, 2014 Respectfully submitted,

/s/ Barbara S. Wahl
Barbara S. Wahl, D.C. Bar No. 297978
Karen Ellis Carr, D.C. Bar No. 975480
ARENT FOX LLP
1717 K Street, N.W.
Washington, DC 20006-5344
202.857.6000 – Telephone
202.857.6395 – Facsimile
Barbara.wahl@arentfox.com
Karen.carr@arentfox.com

*Attorneys for Plaintiff Lawyers' Committee for Civil Rights Under Law*