# EXHIBIT 7

**haynes**boone

November 7, 2014

Nicholas T. Christakos        *(via email nicholas.christakos@sutherland.com)*
Sutherland Asbill & Brennan, LLP
700 Sixth Street, NW
Suite 700
Washington, D.C. 20001

      Re:    1401 New York Avenue, NW, Washington, D.C;
               Lease of Lawyers' Committee for Civil Rights Under Law, dated February 24, 1999, as amended from time to time (collectively, the "Lease"). Terms defined below have the same meaning as in the Lease.

Dear Mr. Christakos:

We have been retained by Landlord and are in receipt of your prior communications on behalf of Tenant relating to 1401 New York Avenue, NW. This letter is in response to your prior communications and sets forth Landlord's position, the more than reasonable efforts it has taken to avoid disruption to Tenant's business, as well as alternatives that will hopefully provide the foundation for an amicable resolution of this matter.

**Landlord's and Tenant's Rights Under the Lease**

Section 15.02(a) of the lease makes crystal clear:

> "Tenant understands and agrees that Landlord may . . . perform substantial repair or renovation work in and to the Building . . . (which work may include . . . the replacement of the Building's exterior façade, exterior window glass . . . air conditioning and ventilating systems . . . ), any of which work may require access to same from within the Premises. Tenant agrees . . . Landlord shall incur no liability to Tenant. . . nor shall Tenant be entitled to any abatement of rent on account of any noise, vibration or other disturbance to Tenant's business at the Premises . . . which shall arise out of said access by Landlord or the performance by Landlord of the aforesaid repair or renovations at the Building."

Since Tenant will not be denied access to the Premises during the renovations, Landlord's obligation is to "use reasonable efforts (which shall not include any obligation to employ labor at overtime rates) to avoid disruption of Tenant's business during the performance of any such work by Landlord." See Lease, § 15.02(b). While Landlord is aware of the quiet enjoyment provision of Section 24.04, Tenant's rights are expressly subject to the "exceptions, reservations

Haynes and Boone, LLP
Attorneys and Counselors
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Phone: 214.651.5000
Fax: 214.651.5940
www.haynesboone.com

**haynes**boone

Mr. Christakos
November 7, 2014
Page 2

_____

and conditions of this Lease." Tenant's right to quiet enjoyment is accordingly expressly subject to Landlord's right to conduct repairs and renovations as described in Section 15 of the Lease, including the replacement of the Building's exterior façade and ventilating system. I also want to point out that if Landlord prevails on any action relating to Article 15 of the Lease, whether initiated by Landlord or Tenant, Landlord is entitled to recover its legal fees, costs and expenses associated with such action. *See* Lease, § 15.02(b); s*ee also* Lease, §21.05 (providing Landlord with further rights to collect attorneys' fees in the event Landlord obtains all or substantially all of the relief it has requested as a result of Tenant's violating any term or provision of the Lease).

We have reviewed the *Stinson Lyons* case referenced in your letter. *Stinson* relies on Florida rather than D.C. law, which governs the Lease. *Stinson* did not purport to define what constitutes "responsible and reasonable" efforts with respect to a landlord's obligation to minimize disruption to tenant's business. *Stinson* merely found that landlord's proposals to reduce disruptions were "responsible and reasonable."

We believe that Landlord's proposals to date more than satisfy its contractual obligation to use reasonable efforts to avoid disruption to Tenant's business. While it is not obligated to do so, Landlord has suggested alternatives which will require it to pay overtime labor rates. Landlord has also solicited Tenant's input on this process and has suggested several alternative construction plans from which Tenant can select the one it believes will be least disruptive to its business. These proposals are summarized in greater detail below. We believe that if an agreement is not reached, a court will find that Landlord has satisfied its contractual obligations under the Section 15.02(b) of the Lease given the proposals it has previously outlined to Tenant.

This position is supported by *Long & Foster Real Estate, Inc. v. CLPF-King Street Ventures, L.P.*, 74 Va. Cir. 87, at *1-2 (Va. Cir. Ct. 2007), which involved a "reasonable efforts" obligation under Virginia law that essentially mirrors Section 15.02(b) in the Lease. In *Long & Foster*, frequent and nearly continuous noise and vibrations from jack hammering made the leased space essentially unusable. Despite these disruptions, the court required no more "reasonable" accommodation than to limit the landlord's disruptive repair work to the hours of 7:00 through 11:00 a.m. While the court recognized that tenant would inevitably be disturbed during those hours, it gave credit to the contractual agreement that landlord "shall not be required to perform the repairs at a time other than during normal working hours."

**Landlord's Proposals to Tenant**

Your letter correctly describes the fact that the Building's external façade will be replaced with a floor-to-ceiling window configuration on each floor. At the same time, Landlord intends to replace the HVAC system throughout the Building. These plans will significantly improve the appearance, efficiency, and comfort in the building. Section 15.02(a) of the Lease specifically

haynes*boone*

Mr. Christakos
November 7, 2014
Page 3

_____

permits Landlord to make these renovations. Landlord believes that given the nature of the renovations, the following options that have been presented to Tenant establish that Landlord has used "reasonable efforts (which shall not include any obligation to employ labor at overtime rates) to avoid disruption to Tenant's business during the performance of any such work by Landlord." The "reasonable efforts" obligation must be viewed in light of Landlord's right to replace, among other things, the Building's external façade, exterior windows and ventilating systems.

    A.  Option 1—Installation of a Temporary Partition

The demolition of the existing façade and installation of the new floor to ceiling curtain wall system is most efficiently achieved by the installation of a temporary partition in the Tenant space approximately eighteen inches inboard from the existing floor mounted heat pump units along the perimeter of the Building. The purpose of the temporary partition is to provide a podium area on the exterior of the building for workers to stand on and safely complete the façade work. It also provides a weatherproof separation between the façade work and the Tenant space.

The work will be performed in a series of four phases, each lasting approximately ninety days which will result in the replacement of approximately one quarter of the Building's total façade at a time. Accordingly, the installation of the temporary partitions will be installed on one quarter of the floor plate at any given time. Each phase of temporary partitions will remain in place for approximately ninety days. In addition to the façade renovation, other work will occur while the partitions are in place. Removal of the floor mounted heat pumps and removal of the existing knee wall occurs during this time from behind the temporary partition. After the temporary partition is removed, the tenant finishes will be extended within the tenant's space to the façade, which will occur during off hours and on weekends. As the majority of this work occurs behind the weatherproof, temporary partition, Tenant will be able to occupy its offices throughout the duration of the renovation.

However, as an accommodation to any employee of the Tenant who does not wish to occupy their office while the temporary partition is in place, the Landlord will provide fully secure, IT-enabled, swing space on the sixth floor of the Building that will not be subject to the partitions. These swing-space offices will be fully furnished and ready for occupancy at no cost to Tenant.

    B.  Option 2—Limited Application of a Temporary Partition

The façade can also be substantially replaced from the outside of the building by using a series of man lifts and working around the Building in four, approximate ninety-day phases described in Option 1. At the beginning of each phase, the existing façade would be removed from the

haynes*boone*

Mr. Christakos
November 7, 2014
Page 4

---

outside of the Building by workmen on the man lifts, with the exception of the existing window system and the infrastructure that holds the window in place. Next, the new floor-to-ceiling curtain wall system would be installed from the outside over the existing window wall system. Then the floor mounted heat pumps, the existing knee wall, and the existing window wall system would be removed from inside the Tenant's space during off hours on nights and weekends, over an approximate eight-week period. Finally, the tenant finishes would be extended to the new façade, also during off hours and weekends, over an approximate three-week period.

Under Option 2, no temporary partition is necessary except, due to the Building's exterior design, **Landlord will be required to install a temporary interior partition wall along the Building's north facade**. In the areas where no partition walls are installed, the barrier between Tenant's space and the ongoing work will essentially be the existing window wall system and its infrastructure. Landlord does not believe this solution is as optimal as the solution outlined in Option 1 above, but it will provide adequate separation from the tenant's space and the work proceeding on the exterior. That, coupled with the off hours nature of the work to be done in the tenant's space under this scenario will allow Tenant to occupy its space throughout the duration of the renovation. However, as in Option 1, the Landlord will make available swing space on the sixth floor to any employee who would prefer to relocate temporarily.

In an effort to even further reduce any disruption to Tenant's business, Landlord has obtained a permit which will allow work on the Building's façade to occur at night and on weekends, even though Landlord is not required to do so under the Section 15.02(b) of the Lease. Landlord's construction costs will undoubtedly be higher if the work is performed at nights and on weekends that if performed during normal business hours. However, please know there are risks that surrounding property owners and residents could complain to the District of Columbia DCRA or other agency and Landlord's rights to move forward with off-hours construction work could be revoked or restricted. Finally, Landlord will also agree to schedule a meeting with Tenant's representatives and its general contractor to discuss Tenant's concerns and whether there are any additional reasonable construction alternatives that may allow any disruptions to Tenant to be further minimized.

### Tenant's Proposals

Landlord has rejected Tenant's proposals which would result in the termination of the Lease and Tenant moving to a location of its choice or to new space at 2001 L Street NW. The Lease does not provide Tenant with any termination rights in the event Landlord contemplates renovations such as those it intends to conduct at the Building. Further, Tenant's proposal of a one-time move to the 9th and 10th floors in the Building is not acceptable.

haynes*boone*

Mr. Christakos
November 7, 2014
Page 5

---

**Next Steps**

While Landlord believes it has satisfied its obligations under Section 15.02(b), it would like to reach an amicable resolution of these matters with Tenant. In this regard, Landlord is willing to discuss a confidential proposal which may include economic concessions with Tenant but will do so only after Tenant and its broker execute a confidentiality and non-disclosure agreement.

Please let me know if you have any questions regarding any of the foregoing. Landlord is interested in trying to amicably resolve this matter as quickly as possible with Tenant. However, in the event that an agreement cannot be reached, Landlord reserves all of its rights under the Lease and otherwise.

Very truly yours,

Richard D. Anigian
Direct Phone Number: 214-651-5633
Direct Fax Number: 214-200-0354
*rick.anigian@haynesboone.com*

D-2318397_1